## THE ROBERT ROBINSON.

THE FANNY P. SKEER. YERTON v. THE ROBERT ROBINSON et al. DEVENDORFF v. SAME.¹

(District Court, S. D. New York. April, 1893.)

COLLISION—STEAM VESSELS CROSSING — TOWING LIGHTS — LONG HAWSER—DEFECTIVE LOOKOUT.

    The tug S., bound out of the East river to Gowanus, at night, with two canal boats alongside, met the tug R., with a scow astern on a hawser of about 75 fathoms. The courses of the two vessels were crossing from two to three points, and, the R. being a little on the port bow of the S., the latter gave one whistle to indicate that she would pass under the stern of the R., to which the latter replied with one whistle. On conflicting testimony, held, that the weight of evidence indicated one of the R.'s vertical lights was not burning when the signals were exchanged. The tugs passed each other 200 to 400 feet distant, but the S. did not perceive the scow until it was within 100 to 200 feet, when she stopped and backed, but the scow collided with and sank the two canal boats. The collision occurred a few hundred yards below Ft. William on Governor's island. Held, that the R. was in fault for failing to exhibit towing lights, and also for misleading the S. by towing the scow on a long hawser in that neighborhood, when the evidence showed that it is customary to shorten hawsers to about 100 feet. But as the night was moonlight, and the scow stood 12 to 15 feet above the water, and, moreover, was exhibiting lights, held, also, that she should have been observed in season by the S., which, for failing to do so, was also in fault.

In Admiralty. Libels filed respectively by Peter Yerton and Alfred Devendorff against the tug Robert Robinson and Scow No. 5, and the tug Fanny P. Skeer, to recover damages for a collision. Decrees against both tugs, but dismissing the libels as to the scow.

Alexander Cameron, for libelants.
Carpenter & Mosher, for the Skeer.
Benedict & Benedict, for the Robinson.

¹Reported by E. G. Benedict, Esq., of the New York bar.

BROWN, District Judge. The above libelants were the owners respectively of the canal boats Jones and Mulhare, which, at about 2 A. M. of October 15, 1891, were sunk a few hundred yards below Fort William, abreast of Governor's island, through collision with Scow No. 5, which was in tow of the tug Robinson. The canal boats were in tow alongside of the tug Skeer, and bound from Morris' dock to Gowanus. The Robinson was towing the scow up the bay upon a hawser of about 75 fathoms. When the Skeer had approached the Robinson within about a quarter of a mile, she gave her a signal of one whistle, indicating that she would go under the Robinson's stern, to which the Robinson answered with one whistle. The Robinson was a little on the port bow of the Skeer, and their courses were crossing, probably from two to three points. That is to be inferred, not merely from the testimony and the diagrams, but from the fact that the Skeer and the Robinson passed each other from 200 to 400 feet distant; and nevertheless, in going not over a hundred yards, the Skeer brought her boats in collision with the scow, which, according to the testimony, was directly behind the Robinson, and in line with her course. The two canal boats projected considerably ahead of the Skeer; and the scow, coming somewhat crosswise, first struck the starboard boat on her bow, and then passing on, ran into the port boat, causing both to sink in a few moments. The Skeer backed away from between them unharmed.

The first and principal point of controversy in the case is, whether at the time of the exchange of whistles, the Robinson exhibited two white vertical lights, as required by the rules, to indicate a tow, or only one white light, as three witnesses for the Skeer expressly testify. The master of the Robinson, on the other hand, testifies that on giving his answering whistle, he turned to look at his pole lights and saw both burning brightly. Two or three other witnesses for the Robinson testify to observing both vertical lights not long before the collision. The shock of collision parted the hawser of the Robinson and broke one of the pole halyards. There is no doubt that immediately after the collision only one staff light was burning. For the Robinson it is claimed that the shock of collision extinguished one of the lights; that until then, both vertical lights were burning; and that the witnesses for the Skeer misapply the time when the second pole light went out.

The contradictions on this point are extremely embarrassing, and I have found it difficult to arrive at any very satisfactory opinion. From the testimony, however, which Mr. Littlefield, the master of the Robinson, gives as to the conversation between him and Capt. Kelly just after the collision, as to the absence of one of the two vertical lights, as well as from the testimony of other witnesses, there can be no doubt that the charge was made against him at that time that he had not had the proper lights to indicate a tow; and it is difficult to suppose that charge would have been willfully and falsely trumped up within a few moments of the collision, as it must have been, if the pilot and the mate of the Skeer had seen two pole lights instead of one. They had noticed the Robinson at a sufficient dis-

tance; each was showing to the other her red light, and the officers of the Skeer were the first to give proper signals to indicate that she would go under the Robinson's stern. It seems scarcely credible, therefore, that they should not have noticed the two staff lights of the Robinson, if at that time two had been showing; nor, if they had noticed two, that they should a few moments afterwards have charged the master of the Skeer with having but one. Their testimony is confirmed by the man on the Jones, who came on deck when the scow was only 100 feet away, and is quite positive that there was but a single pole light then burning. A rigid cross-examination seems to me to have been well supported by him, and I do not think it is shown that he was not in a position to see the tug and her staff lights before collision. It is, however, possible in his case that the time of noticing the pole light may have been transposed.

I do not attach very much weight to the testimony of several of the witnesses for the Robinson, who think they saw the two pole lights shortly before collision. They had no duty in regard to it; and there was nothing to call their attention to it. The pilot and mate of the Skeer, on the other hand, were navigating in reference to the Robinson, as their original whistle to her shows, and designed to go under her stern; and from the time she was first seen by them until they passed from 200 to 400 feet abreast of her, there was abundant opportunity to see the lights she carried; and as the Skeer was crossing the Robinson's course under her stern, it seems to be, as above stated, incredible that they should not have paid sufficient attention to see whether she indicated a tow or not, or should not have seen both the staff lights, if they were properly burning. Upon these circumstances and the testimony, therefore, it seems to me that the weight of probability is in favor of the Skeer.

In one other regard I think the Robinson ought, also, to be held in fault; namely, for the unusual length of hawser which she was using for the scow in that situation. The evidence leaves no doubt that it was customary, in towing light scows up the bay, to shorten the hawser to about 100 feet off Red Hook, or in that neighborhood. This was expected by the men on board the Robinson that night; and they were in attendance for that purpose, as appears from their testimony; but it was not shortened. The Skeer crossed the Robinson's course about 400 feet astern of her, and this was twice the distance of an ordinary scow-tow upon a hawser in that region. The scow was not seen by the Skeer until within one or two hundred feet of her, when orders to reverse were immediately given, but too late. There is no doubt that the Skeer was misled, or misunderstood the situation. An unusual length of hawser would contribute to mislead her, even if there had been two staff lights, and these lights had been seen. The unusually long hawser might account for the collision, even if the story of the Skeer in regard to the lights was held to be a fabrication; that is to say, if both lights had been burning, and had been seen by the pilot and mate of the Skeer, since they might have supposed that they went a sufficient distance astern to avoid any stern tow of the Robinson. But this seems hardly credible

upon such a moonlight night. For the Skeer passed the Robinson near enough to see whether the tow, which two pole lights would have indicated, was alongside, or was astern; and it being plain enough that no tow was alongside, it must have been looked for astern. So that if two lights had been visible and seen, it does not seem credible that the collision should have taken place. I think the Robinson must, therefore, be held in fault both for failure to display proper staff lights, and for the unusual length of hawser.

The Skeer must, also, be held in fault for lack of vigilance in observing the scow. She was not only a large object some 12 or 15 feet out of water, easily seen on such a moonlight night, even without lights, in ample time to avoid her; but the evidence also leaves no possible doubt that she had white lights displayed and visible, to which no attention was given until the Skeer had approached within 100 or 200 feet of her. No doubt the fact that the scow was moving through the water, distinguishes the case somewhat from that of running into a similar boat at anchor; but the failure to observe her altogether until she was so near, deprives the Skeer of any defense on that ground, since it wholly fails to meet her negligence in observation, with which I must hold her chargeable. The nonobservance of the scow evidently contributed to the collision; and each must, therefore, contribute to the loss. No fault is proved against the scow. The libelants are each, therefore, entitled to a decree against the Robinson and the Skeer; and the libel as respects the scow must be dismissed. Decrees accordingly.